iii.    Total dollar amount of all Overpayments in the sample.

iv.    Total dollar amount of Paid Claims included in the sample and the net Overpayment associated with the sample.

v.    Error Rate in the sample.

vi.    A spreadsheet of the Claims Review results that includes the following information for each Paid Claim: Federal health care program billed, beneficiary health insurance claim number, date of service, code submitted (e.g., DRG, CPT code, etc.), code reimbursed, allowed amount reimbursed by payor, correct code (as determined by the IRO), correct allowed amount (as determined by the IRO), dollar difference between allowed amount reimbursed by payor and the correct allowed amount.

c.    <u>Recommendations</u>.  The IRO's report shall include any recommendations for improvements to Sierra Vista's billing and coding system based on the findings of the Claims Review

4.    *Systems Review Findings*.  The IRO shall prepare a Systems Review Report based on the Systems Review performed (if applicable) that shall include the IRO's observations, findings, and recommendations regarding:

a.    the strengths and weaknesses in Sierra Vista's billing systems and processes;

b.    the strengths and weaknesses in Sierra Vista's coding systems and processes; and

c.    possible improvements to Sierra Vista's billing and coding systems and processes to address the specific problems or weaknesses that resulted in the identified Overpayments.

5.    *Credentials*.  The names and credentials of the individuals who: (1) designed the statistical sampling procedures and the review methodology utilized for the Claims Review and (2) performed the Claims Review.

6

BHC Sierra Vista Hospital, Inc.
Corporate Integrity Agreement – Appendix B

# CORPORATE INTEGRITY AGREEMENT
# FOR

## McAllen Hospitals, L.P. d/b/a South Texas Health System

**CORPORATE INTEGRITY AGREEMENT**
**BETWEEN THE**
**OFFICE OF INSPECTOR GENERAL**
**OF THE**
**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**AND**
**MCALLEN HOSPITALS, L.P. D/B/A SOUTH TEXAS HEALTH SYSTEM**

## I.   PREAMBLE

McAllen Hospitals, L.P. d/b/a South Texas Health System (STHS) hereby enters into this Corporate Integrity Agreement (CIA) with the Office of Inspector General (OIG) of the United States Department of Health and Human Services (HHS) to promote compliance with the statutes, regulations, and written directives of Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) (Federal health care program requirements). For purposes of this CIA, STHS shall mean the following: (1) McAllen Hospitals, L.P. and its subsidiaries; (2) any other corporation, limited liability company, partnership, legal entity, organization, hospital or other health care facility in which McAllen Hospitals, L.P., or its subsidiary owns a direct or indirect interest; (3) Cornerstone Regional Hospital, Edinburg Children's Hospital, Edinburg Regional Medical Center, Edinburg Regional Rehab Center, McAllen Heart Hospital, McAllen Medical Center, South Texas Behavioral Health Center; and (4) any other hospital or other health care facility that is managed by or whose operations are controlled by McAllen Hospitals, L.P. or its subsidiary. Contemporaneously with this CIA, McAllen Hospitals, L.P. is entering into a Settlement Agreement with the United States.

## II.   TERM AND SCOPE OF THE CIA

A. The period of the compliance obligations assumed by STHS under this CIA shall be 5 years from the effective date of this CIA, unless otherwise specified. The effective date shall be the date on which the final signatory of this CIA executes this CIA (Effective Date). Each one-year period, beginning with the one-year period following the Effective Date, shall be referred to as a "Reporting Period."

GAMD  Page 249

B. Sections VII, IX, X, and XI shall expire no later than 120 days after OIG's receipt of: (1) STHS's final annual report; or (2) any additional materials submitted by STHS pursuant to OIG's request, whichever is later.

C. The scope of this CIA shall be governed by the following definitions:

    1. "Arrangements" shall mean every arrangement or transaction that:

        a. involves, directly or indirectly, the offer, payment, solicitation, or receipt of anything of value; and is between STHS and any actual or potential source of health care business or referrals to STHS or any actual or potential recipient of health care business or referrals from STHS. The term "source" shall mean any physician, contractor, vendor, or agent and the term "health care business or referrals" shall be read to include referring, recommending, arranging for, ordering, leasing, or purchasing of any good, facility, item, or service for which payment may be made in whole or in part by a Federal health care program; or

        b. is between STHS and a physician (or a physician's immediate family member (as defined at 42 C.F.R. § 411.351)) who makes a referral (as defined at 42 U.S.C. § 1395nn(h)(5)) to STHS for designated health services (as defined at 42 U.S.C. § 1395nn(h)(6)).

    2. "Focus Arrangements" means every Arrangement that:

        a. is between STHS and any actual source of health care business or referrals to STHS and involves, directly or indirectly, the offer, payment, or provision of anything of value; or

        b. is between STHS and any physician (or a physician's immediate family member (as defined at 42 C.F.R. § 411.351)) who makes a referral (as defined at 42 U.S.C. § 1395nn(h)(5)) to STHS for designated health services (as defined at 42 U.S.C. 1395nn(h)(6)).

Notwithstanding the foregoing provisions of Section II.C, any Arrangement that satisfies the requirements of 42 C.F.R. § 411.356 (ownership of

South Texas Health System
Corporate Integrity Agreement

2

investment interests), 42 C.F.R. § 411.357(g) (remuneration related to the provision of designated health services); 42 C.F.R. § 411.357(i) (payments by a physician for items and services), 42 C.F.R. § 411.357(m) (medical staff incidental privileges), 42 C.F.R. § 411.357(o) (compliance training), 42 C.F.R. § 411.357(q) (referral services), 42 C.F.R. § 411.357(s) (professional courtesy), 42 C.F.R. § 357(u) (community-wide health information systems), or any exception to the prohibitions of 42 U.S.C. § 1395nn enacted following the Effective Date that does not require a written agreement shall not be considered a Focus Arrangement for purposes of this CIA. In addition, Focus Arrangements shall not include any Arrangements between STHS and any employee of STHS (i) who is not a licensed or certified health care provider; (ii) who does not provide health care items or services on behalf of STHS for which payment may be made in whole or in part by a Federal health care program; and (iii) whose employment relationship meets the safe harbor set forth at 42 C.F.R. § 1001.952(i).

3. "Covered Persons" includes:

    a. all owners, officers, appointed and elected members of the Board of Governors, Board of Directors, or other governing body of STHS (hereinafter "the Governing Body of STHS"), and employees of STHS;

    b. all contractors, subcontractors, agents, and other persons who provide patient care items or services or who perform billing or coding functions on behalf of STHS excluding vendors whose sole connection with STHS is selling or otherwise providing medical supplies or equipment to STHS and who do not bill the Federal health care programs for such medical supplies or equipment; and

    c. all physicians and other non-physician practitioners who are members of the active medical staffs of STHS.

Notwithstanding the above, this term does not include part-time or per diem employees, contractors, subcontractors, agents, and other persons who are not reasonably expected to work more than 160 hours per year, except that

any such individuals shall become "Covered Persons" at the point when they work more than 160 hours during the calendar year.

4. "Arrangements Covered Persons" includes each Covered Person involved with the development, approval, management, or review of Arrangements, as such term is defined in Section II.C.1.

## III. CORPORATE INTEGRITY OBLIGATIONS

STHS shall establish and maintain a Compliance Program that includes the following elements:

### A. Compliance Officer and Committee.

1. Compliance Officer. Within 90 days after the Effective Date, STHS shall appoint an individual to serve as STHS's Compliance Officer (the "Compliance Officer") and shall maintain a Compliance Officer for the term of the CIA. The Compliance Officer shall be responsible for developing and implementing policies, procedures, and practices designed to ensure compliance at STHS with the requirements set forth in this CIA and with Federal health care program requirements. The Compliance Officer shall be a member of senior management of STHS, shall make periodic (at least quarterly) reports regarding compliance matters directly to the Governing Body of STHS, and shall be authorized to report on such matters to the Governing Body of STHS at any time. The Compliance Officer shall not be or be, directly or indirectly, subordinate to the General Counsel or Chief Financial Officer of any entity, including but not limited to STHS, Universal Health Services, or UHS of Delaware, Inc. The Compliance Officer shall be responsible for monitoring the day-to-day compliance activities engaged in by STHS as well as for any reporting obligations created under this CIA.

STHS shall report to OIG, in writing, any changes in the identity or position description of the Compliance Officer, or any actions or changes that would affect the Compliance Officer's ability to perform the duties necessary to meet the obligations in this CIA, within 15 days after such a change.

2. Compliance Committee. Within 90 days after the Effective Date, STHS shall appoint a Compliance Committee. The Compliance Committee shall, at a minimum, include the Compliance Officer and other members of senior management necessary to

South Texas Health System
Corporate Integrity Agreement

4

meet the requirements of this CIA (e.g., senior executives of relevant departments, such as billing, clinical, human resources, audit, and operations). The Compliance Officer shall chair the Compliance Committee and the Committee shall support the Compliance Officer in fulfilling his/her responsibilities (e.g., shall assist in the analysis of the organization's risk areas and shall oversee monitoring of internal and external audits and investigations).

STHS shall report to OIG, in writing, any changes in the composition of the Compliance Committee, or any actions or changes that would affect the Compliance Committee's ability to perform the duties necessary to meet the obligations in this CIA, within 15 days after such a change.

B. Written Standards.

1. Code of Conduct. Within 90 days after the Effective Date, STHS shall develop, implement, and distribute a written Code of Conduct to all Covered Persons. STHS shall make the promotion of, and adherence to, the Code of Conduct an element in evaluating the performance of all employees who are Covered Persons. The Code of Conduct shall, at a minimum, set forth:

> a. STHS's commitment to full compliance with all Federal health care program requirements, including its commitment to prepare and submit accurate claims consistent with such requirements;
>
> b. the requirement that all Covered Persons shall be expected to comply with all Federal health care program requirements and with STHS's own Policies and Procedures as implemented pursuant to Section III.B (including the requirements of this CIA);
>
> c. the requirement that all Covered Persons shall be expected to report to the Compliance Officer, or other appropriate individual designated by STHS, suspected violations of any Federal health care program requirements or of STHS's own Policies and Procedures;
>
> d. the possible consequences to STHS and Covered Persons of failure to comply with Federal health care program requirements and

South Texas Health System
Corporate Integrity Agreement

5

with STHS's own Policies and Procedures and the failure to report such noncompliance; and

e. the right of all individuals to use the Disclosure Program described in Section III.F, and STHS's commitment to nonretaliation and to maintain, as appropriate, confidentiality and anonymity with respect to such disclosures.

Within 90 days after the Effective Date, each Covered Person shall certify, in writing, or in electronic form, if applicable, that he or she has received, read, understood, and shall abide by STHS's Code of Conduct. New Covered Persons shall receive the Code of Conduct and shall complete the required certification within 30 days after becoming a Covered Person or within 90 days after the Effective Date, whichever is later.

STHS shall periodically review the Code of Conduct to determine if revisions are appropriate and shall make any necessary revisions based on such review. Any revised Code of Conduct shall be distributed within 30 days after any revisions are finalized. Each Covered Person shall certify, in writing, or in electronic form, if applicable, that he or she has received, read, understood, and shall abide by the revised Code of Conduct within 30 days after the distribution of the revised Code of Conduct.

2. Policies and Procedures. Within 90 days after the Effective Date, STHS shall implement written Policies and Procedures regarding the operation of STHS's compliance program and its compliance with Federal health care program requirements. At a minimum, the Policies and Procedures shall address:

a. the subjects relating to the Code of Conduct identified in Section III.B.1;

b. 42 U.S.C. § 1320a-7b(b) (Anti-Kickback Statute) and 42 U.S.C. § 1395nn (Stark Law), and the regulations and other guidance documents related to these statutes, and business or financial arrangements or contracts that generate unlawful Federal health care program business in violation of the Anti-Kickback Statute or the Stark Law; and

c. the requirements set forth in Section III.D (Compliance with the

South Texas Health System
Corporate Integrity Agreement

6

Anti-Kickback Statute and Stark Law), including but not limited to the Focus Arrangements Database, the internal review and approval process, and the tracking of remuneration to and from sources of health care business or referrals.

Within 90 days after the Effective Date, the relevant portions of the Policies and Procedures shall be distributed to all Covered Persons whose job functions relate to those Policies and Procedures. Appropriate and knowledgeable staff shall be available to explain the Policies and Procedures.

At least annually (and more frequently, if appropriate), STHS shall assess and update, as necessary, the Policies and Procedures. Within 30 days after the effective date of any revisions, the relevant portions of any such revised Policies and Procedures shall be distributed to all Covered Persons whose job functions relate to those Policies and Procedures.

C. Training and Education.

1. General Training. Within 90 days after the Effective Date, STHS shall provide at least one hour of General Training to each Covered Person. This training, at a minimum, shall explain STHS's:

a. CIA requirements; and

b. Compliance Program (including the Code of Conduct and the Policies and Procedures as they pertain to general compliance issues).

New Covered Persons shall receive the General Training described above within 30 days after becoming a Covered Person or within 90 days after the Effective Date, whichever is later. After receiving the initial General Training described above, each Covered Person shall receive at least one hour of General Training in each subsequent Reporting Period.

2. Arrangements Training. Within 120 days after the Effective Date, each Arrangements Covered Person shall receive at least three hours of Arrangements Training, in addition to the General Training required above. The Arrangements Training

South Texas Health System
Corporate Integrity Agreement

7

shall include a discussion of:

a. Arrangements that potentially implicate the Anti-Kickback Statute or the Stark Law, as well as the regulations and other guidance documents related to these statutes;

b. STHS's policies, procedures, and other requirements relating to Arrangements, including but not limited to the Focus Arrangements Database, the internal review and approval process, and the tracking of remuneration to and from sources of health care business or referrals required by Section III.D of the CIA;

c. the personal obligation of each individual involved in the development, approval, management, or review of Arrangements to know the applicable legal requirements and STHS's policies and procedures;

d. the legal sanctions under the Anti-Kickback Statute and the Stark Law; and

e. examples of violations of the Anti-Kickback Statute and the Stark Law.

New Arrangements Covered Persons shall receive this training within 30 days after the beginning of their employment or becoming Arrangements Covered Persons, or within 120 days after the Effective Date, whichever is later. An Arrangements Covered Person who has completed the Arrangements Training shall review a new Arrangements Covered Person's work until such time as the new Arrangements Covered Person completes his or her Arrangements Training.

After receiving the initial Arrangements Training described in this Section, each Arrangements Covered Person shall receive at least two hours of Arrangements Training in each subsequent Reporting Period.

3. *Certification.* Each individual who is required to attend training shall certify, in writing, or in electronic form, if applicable, that he or she has received the required training. The certification shall specify the type of training received and the date

South Texas Health System
Corporate Integrity Agreement

8

received. The Compliance Officer (or designee) shall retain the certifications, along with all course materials. These shall be made available to OIG, upon request.

4. *Qualifications of Trainer*. Persons providing the training shall be knowledgeable about the subject area.

5. *Update of Training*. STHS shall review the training annually, and, where appropriate, update the training to reflect changes in Federal health care program requirements, any issues discovered during internal audits or the Focus Arrangements Review and any other relevant information.

6. *Computer-based Training*. STHS may provide the training required under this CIA through appropriate computer-based training approaches. If STHS chooses to provide computer-based training, it shall make available appropriately qualified and knowledgeable staff or trainers to answer questions or provide additional information to the individuals receiving such training.

7. *Exception for Active Medical Staff Members*. STHS shall make the General Training and Arrangements Training (as appropriate) described in this Section III.C available to all of STHS's active medical staff members and shall use its best efforts to encourage such active medical staff members to complete the training. The Compliance Officer shall maintain records of all active medical staff members who receive training, including the type of training and the date received. These records shall be made available to OIG, upon request.

D. Compliance with the Anti-Kickback Statute and Stark Law.

1. *Arrangements Procedures*. Within 90 days after the Effective Date, STHS shall create procedures reasonably designed to ensure that each existing and new or renewed Arrangement does not violate the Anti-Kickback Statute and/or the Stark Law or the regulations, directives, and guidance related to these statutes (Arrangements Procedures). These procedures shall include the following:

> a. creating and maintaining a database of all existing and new or renewed Focus Arrangements that shall contain the information specified in Appendix A (Focus Arrangements Database);

South Texas Health System
Corporate Integrity Agreement

9

b. tracking remuneration to and from all parties to Focus Arrangements;

c. tracking service and activity logs to ensure that parties to the Focus Arrangements are performing the services required under the applicable Focus Arrangement(s) (if applicable);

d. monitoring the use of leased space, medical supplies, medical devices, equipment, or other patient care items to ensure that such use is consistent with the terms of the applicable Focus Arrangement(s) (if applicable);

e. establishing and implementing a written review and approval process for all Arrangements, including but not limited to a legal review of Focus Arrangements by counsel with expertise in the Anti-Kickback Statute and Stark Law and appropriate documentation of all internal controls, the purpose of which is to ensure that all new and existing or renewed Arrangements do not violate the Anti-Kickback Statute and Stark Law;

f. requiring the Compliance Officer to review the Focus Arrangements Database, internal review and approval process, and other Arrangements Procedures on at least a quarterly basis and to provide a report on the results of such review to the Compliance Committee; and

g. implementing effective responses when suspected violations of the Anti-Kickback Statute and Stark Law are discovered, including disclosing Reportable Events and quantifying and repaying Overpayments pursuant to Section III.I (Reporting) when appropriate.

    2. *New or Renewed Focus Arrangements.* Prior to the date on which new Focus Arrangements are entered into or existing Focus Arrangements are renewed, in addition to complying with the Arrangements Procedures set forth above, STHS shall comply with the following requirements (Focus Arrangements Requirements):

South Texas Health System
Corporate Integrity Agreement

10

a. Ensure that each Focus Arrangement is set forth in writing and signed by STHS and the other parties to the Focus Arrangement;

b. Include in the written agreement a requirement that all individuals who meet the definition of Covered Persons shall comply with STHS's Compliance Program, including the training related to the Anti-Kickback Statute and the Stark Law. Additionally, STHS shall provide each party to the Focus Arrangement with a copy of its Code of Conduct and Stark Law and Anti-Kickback Statute Policies and Procedures; and

c. Include in the written agreement a certification by the parties to the Focus Arrangement that the parties shall not violate the Anti-Kickback Statute and the Stark Law with respect to the performance of the Focus Arrangement.

3. *Records Retention and Access*. STHS shall retain and make available to OIG, upon request, the Focus Arrangements Database and all supporting documentation of the Focus Arrangements subject to this Section and, to the extent available, all non-privileged communications related to the Focus Arrangements and the actual performance of the duties under the Focus Arrangements.

E. Review Procedures.

1. *General Description.*

a. *Engagement of Independent Review Organization.* Within 90 days after the Effective Date, STHS shall engage an individual or entity (or entities), such as an accounting, auditing, law, or consulting firm (hereinafter "Independent Review Organization" or "IRO"), to perform the following reviews: (i) a review to assist STHS in assessing its compliance with the obligations pursuant to Section III.D of this CIA (Focus Arrangements Review); and (ii) a review to analyze whether STHS sought payment for certain unallowable costs (Unallowable Cost Review). The IRO engaged by STHS to perform the Unallowable Cost Review shall have expertise in the cost reporting requirements applicable to STHS and in the

South Texas Health System
Corporate Integrity Agreement

11

general requirements of the Federal health care program(s) from which STHS seeks reimbursement.

Each IRO shall assess, along with STHS, whether it can perform the IRO review in a professionally independent and objective fashion, as appropriate to the nature of the engagement, taking into account any other business relationships or other engagements that may exist. The engagement of the IRO for the Focus Arrangements Review shall not be deemed to create an attorney-client relationship between the IRO and STHS. The other applicable requirements relating to the IRO(s) are outlined in Appendix B to this CIA, which is incorporated by reference.

b. *Frequency of Focus Arrangements Review.* The Focus Arrangements Review shall be performed annually and shall cover each of the Reporting Periods. The IRO(s) shall perform all components of each annual Focus Arrangements Review.

c. *Frequency of Unallowable Cost Review.* If applicable, the IRO shall perform the Unallowable Cost Review for the first Reporting Period.

d. *Retention of Records.* The IRO and STHS shall retain and make available to OIG, upon request, all work papers, supporting documentation, correspondence, and draft reports (those exchanged between the IRO and STHS related to the reviews.

e. *Responsibilities and Liabilities.* Nothing in this Section III.E affects STHS's responsibilities or liabilities under any criminal, civil, or administrative laws or regulations applicable to any Federal health care program including, but not limited to, the Anti-Kickback Statute and/or the Stark Law.

2. *Focus Arrangements Review.* The IRO shall perform a review to assess whether STHS is complying with the Arrangements Procedures and Focus Arrangements Requirements required by Sections III.D.1 and III.D.2 of this CIA. The IRO shall randomly select a sample of 75 Focus Arrangements that were entered into or renewed

South Texas Health System
Corporate Integrity Agreement

12

during the Reporting Period. The IRO shall assess whether STHS has implemented the Arrangements Procedures and, for each selected Focus Arrangement, the IRO shall assess whether STHS has complied with the Arrangements Procedures and Focus Arrangements Requirements specifically with respect to that Focus Arrangement. The IRO's assessment shall include, but is not limited to (a) verifying that the Focus Arrangement is listed in the Focus Arrangements Database; (b) verifying that the Focus Arrangement was subject to the internal review and approval process (including both a legal and business review) and obtained the necessary approvals and that such review and approval is appropriately documented; (c) verifying that the remuneration related to the Focus Arrangement is properly tracked; (d) verifying that the service and activity logs are properly completed and reviewed (if applicable); (e) verifying that leased space, medical supplies, medical devices, and equipment, and other patient care items are properly monitored (if applicable); (f) verifying that the Compliance Officer is reviewing the Focus Arrangements Database, internal review and approval process, and other Arrangements Procedures on a quarterly basis and reporting the results of such review to the Compliance Committee; (g) verifying that effective responses are being implemented when violations of the Anti-Kickback Statute and Stark Law are discovered; and (h) verifying that STHS has met the requirements of Section III.D.2.

   3. *Focus Arrangements Review Report.* The IRO shall prepare a report based upon the Focus Arrangements Review performed (Focus Arrangements Review Report). The Focus Arrangements Review Report shall include the IRO's findings with respect to (a) whether STHS has generally implemented the Arrangements Procedures described in Section III.D.1; and (b) specific findings as to whether STHS has complied with the Arrangements Procedures and Focus Arrangements Requirements with respect to each of the randomly selected Focus Arrangements reviewed by the IRO. In addition, the Focus Arrangements Review Report shall include any observations, findings and recommendations on possible improvements to STHS policies, procedures, and systems in place to ensure that all Focus Arrangements do not violate the Anti-Kickback Statute and Stark Law.

   4. *Unallowable Cost Review.* The IRO shall conduct a review of STHS's compliance with the unallowable cost provisions of the Settlement Agreement. The IRO shall determine whether STHS has complied with its obligations not to charge to, or otherwise seek payment from, federal or state payors for unallowable costs (as defined in the Settlement Agreement) and its obligation to identify to applicable federal or state payors any unallowable costs included in payments previously sought from the United

South Texas Health System
Corporate Integrity Agreement

13

States, or any state Medicaid program. This unallowable cost analysis shall include, but not be limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by STHS or any affiliates. To the extent that such cost reports, cost statements, information reports, or payment requests, even if already settled, have been adjusted to account for the effect of the inclusion of the unallowable costs, the IRO shall determine if such adjustments were proper. In making this determination, the IRO may need to review cost reports and/or financial statements from the year in which the Settlement Agreement was executed, as well as from previous years.

5. *Unallowable Cost Review Report.* The IRO shall prepare a report based upon the Unallowable Cost Review performed. The Unallowable Cost Review Report shall include the IRO's findings and supporting rationale regarding the Unallowable Costs Review and whether STHS has complied with its obligation not to charge to, or otherwise seek payment from, federal or state payors for unallowable costs (as defined in the Settlement Agreement) and its obligation to identify to applicable federal or state payors any unallowable costs included in payments previously sought from such payor.

6. *Validation Review.* In the event OIG has reason to believe that: (a) the Focus Arrangements Review fails to conform to the requirements of this CIA; or (b) the IRO's findings or Focus Arrangements Review results are inaccurate, OIG may, at its sole discretion, conduct its own review to determine whether the Focus Arrangements Review complied with the requirements of the CIA and/or the findings or Focus Arrangements Review results are inaccurate (Validation Review). STHS shall pay for the reasonable cost of any such review performed by OIG or any of its designated agents. Any Validation Review of Reports submitted as part of the final STHS Annual Report required by this CIA shall be initiated no later than one year after STHS's final submission (as described in Section II) is received by OIG.

Prior to initiating a Validation Review, OIG shall notify STHS of its intent to do so and provide a written explanation of why OIG believes such a review is necessary. To resolve any concerns raised by OIG, STHS may request a meeting with OIG to: (a) discuss the results of any Focus Arrangements Review submissions or findings; (b) present any additional information to clarify the results of the Focus Arrangements Review or to correct the inaccuracy of the Focus Arrangements Review; and/or (c) propose alternatives to the proposed Validation Review. STHS agrees to provide any additional information as may be requested by OIG under this Section III.E.6

South Texas Health System
Corporate Integrity Agreement

14

in an expedited manner. OIG will attempt in good faith to resolve any Focus Arrangements Review issues with STHS prior to conducting a Validation Review. However, the final determination as to whether or not to proceed with a Validation Review shall be made at the sole discretion of OIG.

      7. *Independence and Objectivity Certification*. The IRO shall include in its Focus Arrangements Review Report(s) a certification or sworn affidavit that it has evaluated its professional independence and objectivity, as appropriate to the nature of the engagement, with regard to the Focus Arrangements Review and that it has concluded that it is, in fact, independent and objective.

      F. Disclosure Program.

      Within 90 days after the Effective Date, STHS shall establish a Disclosure Program that includes a mechanism (e.g., a toll-free compliance telephone line) to enable individuals to disclose, to the Compliance Officer or some other person who is not in the disclosing individual's chain of command, any identified issues or questions associated with STHS's policies, conduct, practices, or procedures with respect to a Federal health care program believed by the individual to be a potential violation of criminal, civil, or administrative law. STHS shall appropriately publicize the existence of the disclosure mechanism (e.g., via periodic e-mails to employees or by posting the information in prominent common areas).

      The Disclosure Program shall emphasize a nonretribution, nonretaliation policy, and shall include a reporting mechanism for anonymous communications for which appropriate confidentiality shall be maintained. Upon receipt of a disclosure, the Compliance Officer (or designee) shall gather all relevant information from the disclosing individual. The Compliance Officer (or designee) shall make a preliminary, good faith inquiry into the allegations set forth in every disclosure to ensure that he or she has obtained all of the information necessary to determine whether a further review should be conducted. For any disclosure that is sufficiently specific so that it reasonably: (1) permits a determination of the appropriateness of the alleged improper practice; and (2) provides an opportunity for taking corrective action, STHS shall conduct an internal review of the allegations set forth in the disclosure and ensure that proper follow-up is conducted.

      The Compliance Officer (or designee) shall maintain a disclosure log, which shall

South Texas Health System
Corporate Integrity Agreement

15

include a record and summary of each disclosure received (whether anonymous or not), the status of the respective internal reviews, and any corrective action taken in response to the internal reviews. The disclosure log shall be made available to OIG upon request.

G. Ineligible Persons.

1. *Definitions.* For purposes of this CIA:

a. an "Ineligible Person" shall include an individual or entity who:

i. is currently excluded, debarred, suspended, or otherwise ineligible to participate in the Federal health care programs or in Federal procurement or nonprocurement programs; or

ii. has been convicted of a criminal offense that falls within the scope of 42 U.S.C. § 1320a-7(a), but has not yet been excluded, debarred, suspended, or otherwise declared ineligible.

b. "Exclusion Lists" include:

i. the HHS/OIG List of Excluded Individuals/Entities (available through the Internet at http://www.oig.hhs.gov); and

ii. the General Services Administration's List of Parties Excluded from Federal Programs (available through the Internet at http://www.epls.gov).

2. *Screening Requirements.* STHS shall ensure that all Covered Persons are not Ineligible Persons, by implementing the following screening requirements.

a. STHS shall screen all Covered Persons against the Exclusion Lists prior to engaging their services and, as part of the hiring or contracting process, shall require such Covered Persons to disclose whether they are Ineligible Persons.

South Texas Health System
Corporate Integrity Agreement

16

b. STHS shall screen all Covered Persons against the Exclusion Lists within 90 days after the Effective Date and on an annual basis thereafter.

c. STHS shall implement a policy requiring all Covered Persons to disclose immediately any debarment, exclusion, suspension, or other event that makes that person an Ineligible Person.

Nothing in this Section affects the responsibility of (or liability for) STHS to refrain from billing Federal health care programs for items or services furnished, ordered, or prescribed by an Ineligible Person. STHS understands that items or services furnished by excluded persons are not payable by Federal health care programs and that STHS may be liable for overpayments and/or criminal, civil, and administrative sanctions for employing or contracting with an excluded person regardless of whether STHS meets the requirements of this Section III.G.

3. *Removal Requirement.* If STHS has actual notice that a Covered Person has become an Ineligible Person, STHS shall remove such Covered Person from responsibility for, or involvement with STHS business operations related to the Federal health care programs and shall remove such Covered Person from any position for which the Covered Person's compensation or the items or services furnished, ordered, or prescribed by the Covered Person are paid in whole or part, directly or indirectly, by Federal health care programs or otherwise with Federal funds at least until such time as the Covered Person is reinstated into participation in the Federal health care programs.

4. *Pending Charges and Proposed Exclusions.* STHS has actual notice that a Covered Person is charged with a criminal offense that falls within the scope of 42 U.S.C. §§ 1320a-7(a), 1320a-7(b)(1)-(3), or is proposed for exclusion during the Covered Person's employment or contract term of during the term of a physician's or other practitioner's medical staff privilege, STHS shall take all appropriate actions to ensure that the responsibilities of that Covered Person have not and shall not adversely affect the quality of care rendered to any beneficiary, patient, or resident, or any claims submitted to any Federal health care program.

H. Notification of Government Investigation or Legal Proceedings.

South Texas Health System
Corporate Integrity Agreement

17

Within 30 days after discovery, STHS shall notify OIG, in writing, of any ongoing investigation or legal proceeding known to STHS conducted or brought by a governmental entity or its agents involving an allegation that STHS has committed a crime or has engaged in fraudulent activities. This notification shall include a description of the allegation, the identity of the investigating or prosecuting agency, and the status of such investigation or legal proceeding. STHS shall also provide written notice to OIG within 30 days after the resolution of the matter, and shall provide OIG with a description of the findings and/or results of the investigation or proceedings, if any.

I. Reporting.

1. *Overpayments.*

a. *Definition of Overpayments.* For purposes of this CIA, an "Overpayment" shall mean the amount of money STHS has received in excess of the amount due and payable under any Federal health care program requirements.

b. *Reporting of Overpayments.* If, at any time, STHS identifies or learns of any Overpayment, STHS shall notify the payor (e.g., Medicare fiscal intermediary or carrier) within 30 days after identification of the Overpayment and take remedial steps within 60 days after identification (or such additional time as may be agreed to by the payor) to correct the problem, including preventing the underlying problem and the Overpayment from recurring. Also, within 30 days after identification of the Overpayment, STHS shall repay the Overpayment to the appropriate payor to the extent such Overpayment has been quantified. If not yet quantified, within 30 days after identification, STHS shall notify the payor of its efforts to quantify the Overpayment amount along with a schedule of when such work is expected to be completed. Notification and repayment to the payor shall be done in accordance with the payor's policies, and, for Medicare contractors, shall include the information contained on the Overpayment Refund Form, provided as Appendix C to this CIA. Notwithstanding the above, notification and repayment of any Overpayment amount that routinely is reconciled or adjusted pursuant to policies and procedures established by the

South Texas Health System
Corporate Integrity Agreement

18

payor should be handled in accordance with such policies and procedures.

2. *Reportable Events.*

   a. *Definition of Reportable Event.* For purposes of this CIA, a "Reportable Event" means anything that involves:

   i. a substantial Overpayment;

   ii. a matter that a reasonable person would consider a probable violation of criminal, civil, or administrative laws applicable to any Federal health care program for which penalties or exclusion may be authorized; or

   iii. the filing of a bankruptcy petition by STHS.

A Reportable Event may be the result of an isolated event or a series of occurrences.

   b. *Reporting of Reportable Events.* If STHS determines (after a reasonable opportunity to conduct an appropriate review or investigation of the allegations) through any means that there is a Reportable Event, STHS shall notify OIG, in writing, within 30 days after making the determination that the Reportable Event exists. The report to OIG shall include the following information:

   i. If the Reportable Event results in an Overpayment, the report to OIG shall be made at the same time as the notification to the payor required in Section III.I.1, and shall include all of the information on the Overpayment Refund Form, as well as:

      (A) the payor's name, address, and contact person to whom the Overpayment was sent; and

South Texas Health System
Corporate Integrity Agreement

19

        (B) the date of the check and identification number (or electronic transaction number) by which the Overpayment was repaid/refunded;

ii. a complete description of the Reportable Event, including the relevant facts, persons involved, and legal and Federal health care program authorities implicated;

iii. a description of STHS's actions taken to correct the Reportable Event; and

iv. any further steps STHS plans to take to address the Reportable Event and prevent it from recurring.

v. If the Reportable Event involves the filing of a bankruptcy petition, the report to the OIG shall include documentation of the filing and a description of any Federal health care program authorities implicated.

## IV. CHANGES TO BUSINESS UNITS OR LOCATIONS

A. Change or Closure of Unit or Location. In the event that, after the Effective Date, STHS changes locations or closes a business unit or location related to the furnishing of items or services by STHS that may be reimbursed by Federal health care programs, STHS shall notify OIG of this fact as soon as possible, but no later than within 30 days after the date of change or closure of the location.

B. Purchase or Establishment of New Unit or Location. In the event that, after the Effective Date, STHS purchases or establishes a new business unit or location related to the furnishing of items or services by STHS that may be reimbursed by Federal health care programs, STHS shall notify OIG at least 30 days prior to such purchase or the operation of the new business unit or location. This notification shall include the address of the new business unit or location, phone number, fax number, Medicare Provider number, provider identification number and/or supplier number, and the name and address of the contractor that issued each number. Each new business unit or location and all Covered Persons at each new business unit or location shall be subject to the applicable requirements of this CIA.

South Texas Health System
Corporate Integrity Agreement

20

C. Sale of Unit or Location. In the event that, after the Effective Date, STHS proposes to sell any or all of its business units or locations that are subject to this CIA, STHS shall notify OIG of the proposed sale at least 30 days prior to the sale of such business unit or location. This notification shall include a description of the business unit or location to be sold, a brief description of the terms of the sale, and the name and contact information of the prospective purchaser. This CIA shall be binding on the purchaser of such business unit or location, unless otherwise determined and agreed to in writing by the OIG.

## V. IMPLEMENTATION AND ANNUAL REPORTS

A. Implementation Report. Within 150 days after the Effective Date, STHS shall submit a written report to OIG summarizing the status of its implementation of the requirements of this CIA (Implementation Report). The Implementation Report shall, at a minimum, include:

1. the name, address, phone number, and position description of the Compliance Officer required by Section III.A, and a summary of other noncompliance job responsibilities the Compliance Officer may have;

2. the names and positions of the members of the Compliance Committee required by Section III.A;

3. a copy of the Code of Conduct required by Section III.B.1;

4. a copy of all Policies and Procedures required by Section III.B.2;

5. the number of individuals required to complete the Code of Conduct certification required by Section III.B.1, the percentage of individuals who have completed such certification, and an explanation of any exceptions (the documentation supporting this information shall be available to OIG, upon request);

6. the following information regarding each type of training required by Section III.C:

South Texas Health System
Corporate Integrity Agreement

21

        a.  a description of such training, including a summary of the topics covered, the length of sessions, and a schedule of training sessions;

        b.  the number of individuals required to be trained, percentage of individuals actually trained, and an explanation of any exceptions; and

        c.  with respect to active medical staff members, the number and percentage who completed the training, the type of training and the date received, and a description of STHS's efforts to encourage medical staff members to complete the training.

A copy of all training materials and the documentation supporting this information shall be available to OIG, upon request.

       7.  a description of the Focus Arrangements Database required by Section III.D.1.a;

       8.  a description of the internal review and approval process required by Section III.D.1.e;

       9.  a description of the tracking and monitoring procedures and other Arrangements Procedures required by Section III.D.1;

       10.  a description of the Disclosure Program required by Section III.F;

       11.  the following information regarding the IRO(s): (a) identity, address, and phone number; (b) a copy of the engagement letter; and (c) a summary and description of any and all current and prior engagements and agreements between the IRO and STHS;

       12.  a certification from the IRO regarding its professional independence and objectivity with respect to STHS;

       13.  a description of the process by which STHS fulfills the requirements of Section III.G regarding Ineligible Persons;

South Texas Health System
Corporate Integrity Agreement

14. the name, title, and responsibilities of any person who is determined to be an Ineligible Person under Section III.G; the actions taken in response to the screening and removal obligations set forth in Section III.G; and the actions taken to identify, quantify, and repay any overpayments to Federal health care programs relating to items or services furnished, ordered or prescribed by an Ineligible Person;

15. a list of all of STHS addresses and locations; the corresponding name under which each location is doing business; the corresponding phone numbers and fax numbers; each location's Medicare Provider number(s), provider identification number(s), and/or supplier number(s); and the name and address of each Medicare contractor to which STHS currently submits claims;

16. a description of the corporate structure of STHS. Such description shall identify any parent and sister companies, subsidiaries, and their respective lines of business; and

17. the certifications required by Section V.C.

B. Annual Reports. STHS shall submit to OIG annually a report with respect to the status of, and findings regarding, the compliance activities for each of the five Reporting Periods (Annual Report).

Each Annual Report shall include, at a minimum:

1. any change in the identity, position description, or other noncompliance job responsibilities of the Compliance Officer and any change in the membership of the Compliance Committee described in Section III.A;

2. a summary of any significant changes or amendments to the Policies and Procedures required by Section III.B and the reasons for such changes (e.g., change in contractor policy);

3. the number of individuals required to complete the Code of Conduct certification required by Section III.B.1, the percentage of individuals who have completed such certification, and an explanation of any exceptions (the documentation supporting this information shall be available to OIG, upon request);

South Texas Health System
Corporate Integrity Agreement

23

4. the following information regarding each type of training required by Section III.C:

  a. a description of such training, including a summary of the topics covered, the length of sessions, and a schedule of training sessions;

  b. the number of individuals required to be trained, percentage of individuals actually trained, and an explanation of any exceptions. and

  c. with respect to active medical staff members, the number and percentage who completed the training, the type of training and the date received, and a description of STHS efforts to encourage medical staff members to complete the training.

A copy of all training materials and the documentation supporting this information shall be available to OIG, upon request.

5. a description of any changes to the Focus Arrangements Database required by Section III.D.1.a;

6. a description of any changes to the internal review and approval process required by Section III.D.1.e;

7. a description of any changes to the tracking and monitoring procedures and other Arrangements Procedures required by Section III.D.1;

8. a complete copy of all reports prepared pursuant to Section III.E, along with a copy of the IRO's engagement letter (if applicable);

9. STHS's response and corrective action plan(s) related to any issues raised by the reports prepared pursuant to Section III.E;

10. a summary and description of any and all current and prior engagements and agreements between the IRO and STHS, if different from what was submitted as part of the Implementation Report;

South Texas Health System
Corporate Integrity Agreement

24

11. a certification from the IRO regarding its professional independence and objectivity with respect to STHS;

12. a summary of Reportable Events (as defined in Section III.I) identified during the Reporting Period and the status of any corrective and preventative action relating to all such Reportable Events;

13. a report of the aggregate Overpayments that have been returned to the Federal health care programs. Overpayment amounts shall be broken down into the following categories: inpatient Medicare, outpatient Medicare, Medicaid (report each applicable state separately, if applicable), and other Federal health care programs. Overpayment amounts that are routinely reconciled or adjusted pursuant to policies and procedures established by the payor do not need to be included in this aggregate Overpayment report;

14. a summary of the disclosures in the disclosure log required by Section III.F that: (a) relate to Federal health care programs; (b) allege abuse or neglect of patients; or (c) involve allegations of conduct that may involve illegal remunerations or inappropriate referrals in violation of the Anti-Kickback Statute or Stark law;

15. any changes to the process by which STHS fulfills the requirements of Section III.G regarding Ineligible Persons;

16. the name, title, and responsibilities of any person who is determined to be an Ineligible Person under Section III.G; the actions taken by STHS in response to the screening and removal obligations set forth in Section III.G; and the actions taken to identify, quantify, and repay any overpayments to Federal health care programs relating to items or services furnished, ordered or prescribed by an Ineligible Person;

17. a summary describing any ongoing investigation or legal proceeding required to have been reported pursuant to Section III.H. The summary shall include a description of the allegation, the identity of the investigating or prosecuting agency, and the status of such investigation or legal proceeding;

18. a description of all changes to the most recently provided list of STHS's addresses and locations as required by Section V.A.15; the corresponding name under which each location is doing business; the corresponding phone numbers and fax

South Texas Health System
Corporate Integrity Agreement

25

numbers; each location's Medicare Provider number(s), provider identification number(s), and/or supplier number(s); and the name and address of each Medicare contractor to which STHS currently submits claims; and

19. the certifications required by Section V.C.

The first Annual Report shall be received by OIG no later than 60 days after the end of the first Reporting Period. Subsequent Annual Reports shall be received by OIG no later than the anniversary date of the due date of the first Annual Report.

C. Certifications. The Implementation Report and Annual Reports shall include a certification by the Compliance Officer that:

1. to the best of his or her knowledge, except as otherwise described in the applicable report, STHS is in compliance with all of the requirements of this CIA;

2. to the best of his or her knowledge, STHS has implemented procedures reasonably designed to ensure that all Arrangements do not violate the Anti-Kickback Statute and Stark Law, including the Arrangements Procedures required in Section III.D of the CIA;

3. to the best of his or her knowledge, STHS has fulfilled the requirements for New and Renewed Focus Arrangements under Section III.D.2 of the CIA;

4. he or she has reviewed the Report and has made reasonable inquiry regarding its content and believes that the information in the Report is accurate and truthful; and

5. to the best of his or her knowledge, STHS has complied with its obligations under the Settlement Agreement: (a) not to resubmit to any Federal health care program payors any previously denied claims related to the Covered Conduct addressed in the Settlement Agreement, and not to appeal any such denials of claims; (b) not to charge to or otherwise seek payment from federal or state payors for unallowable costs (as defined in the Settlement Agreement); and (c) to identify and adjust any past charges or claims for unallowable costs;

D. Designation of Information. STHS shall clearly identify any portions of its

South Texas Health System
Corporate Integrity Agreement

26

submissions that it believes are trade secrets, or information that is commercial or financial and privileged or confidential, and therefore potentially exempt from disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. STHS shall refrain from identifying any information as exempt from disclosure if that information does not meet the criteria for exemption from disclosure under FOIA.

## VI.    NOTIFICATIONS AND SUBMISSION OF REPORTS

Unless otherwise stated in writing after the Effective Date, all notifications and reports required under this CIA shall be submitted to the following entities:

OIG:

> Administrative and Civil Remedies Branch
> Office of Counsel to the Inspector General
> Office of Inspector General
> U.S. Department of Health and Human Services
> Cohen Building, Room 5527
> 330 Independence Avenue, S.W.
> Washington, DC 20201
> Telephone: 202.619.2078
> Facsimile: 202.205.0604

STHS:

> Patricia McClelland
> South Texas Health System Compliance Officer
> South Texas Health System
> 1400 W. Trenton Rd.
> Edinburg, TX 78539

Unless otherwise specified, all notifications and reports required by this CIA may be made by certified mail, overnight mail, hand delivery, or other means, provided that there is proof that such notification was received. For purposes of this requirement, internal facsimile confirmation sheets do not constitute proof of receipt. Upon request by OIG, STHS may be required to provide OIG with an electronic copy of each notification or report required by this CIA in searchable portable document format (pdf), either instead of or in addition to, a paper copy.

South Texas Health System
Corporate Integrity Agreement

27

## VII. OIG INSPECTION, AUDIT, AND REVIEW RIGHTS

In addition to any other rights OIG may have by statute, regulation, or contract, OIG or its duly authorized representative(s) may examine or request copies of STHS books, records, and other documents and supporting materials and/or conduct on-site reviews of any STHS location for the purpose of verifying and evaluating: (a) STHS's compliance with the terms of this CIA; and (b) STHS's compliance with the requirements of the Federal health care programs in which it participates. The documentation described above shall be made available by STHS to OIG or its duly authorized representative(s) at all reasonable times for inspection, audit, or reproduction. Furthermore, for purposes of this provision, OIG or its duly authorized representative(s) may interview any of STHS's employees, contractors, or agents who consent to be interviewed at the individual's place of business during normal business hours or at such other place and time as may be mutually agreed upon between the individual and OIG. STHS shall assist OIG or its duly authorized representative(s) in contacting and arranging interviews with such individuals upon OIG's request. STHS's employees may elect to be interviewed with or without a representative of STHS present.

## VIII. DOCUMENT AND RECORD RETENTION

STHS shall maintain for inspection all documents and records relating to reimbursement from the Federal health care programs, or to compliance with this CIA, for six years (or longer if otherwise required by law) from the Effective Date.

## IX. DISCLOSURES

Consistent with HHS's FOIA procedures, set forth in 45 C.F.R. Part 5, OIG shall make a reasonable effort to notify STHS prior to any release by OIG of information submitted by STHS pursuant to its obligations under this CIA and identified upon submission by STHS as trade secrets, or information that is commercial or financial and privileged or confidential, under the FOIA rules. With respect to such releases, STHS shall have the rights set forth at 45 C.F.R. § 5.65(d).

## X. BREACH AND DEFAULT PROVISIONS

South Texas Health System
Corporate Integrity Agreement

28

STHS is expected to fully and timely comply with all of its CIA obligations.

A. Stipulated Penalties for Failure to Comply with Certain Obligations. As a contractual remedy, STHS, and OIG hereby agree that failure to comply with certain obligations as set forth in this CIA may lead to the imposition of the following monetary penalties (hereinafter referred to as "Stipulated Penalties") in accordance with the following provisions.

1. A Stipulated Penalty of $2,500 (which shall begin to accrue on the day after the date the obligation became due) for each day STHS fails to establish and implement any of the following obligations as described in Section III:

        a. the Compliance Officer;

        b. a Compliance Committee;

        c. a written Code of Conduct;

        d. written Policies and Procedures;

        e. the training of Covered Persons and Arrangements Covered Persons;

        f. the Arrangements Procedures and/or Focus Arrangements Requirements described in Sections III.D.1 and III.D.2;

        g. a Disclosure Program;

        h. Ineligible Persons screening and removal requirements; and

        i. notification of Government investigations or legal proceedings.

2. A Stipulated Penalty of $2,500 (which shall begin to accrue on the day after the date the obligation became due) for each day STHS fails to engage an IRO, as required in Section III.E and Appendix B.

South Texas Health System
Corporate Integrity Agreement

29

3. A Stipulated Penalty of $2,500 (which shall begin to accrue on the day after the date the obligation became due) for each day STHS fails to submit the Implementation Report or any Annual Reports to OIG in accordance with the requirements of Section V by the deadlines for submission.

4. A Stipulated Penalty of $2,500 (which shall begin to accrue on the day after the date the obligation became due) for each day STHS fails to submit the annual Focus Arrangements Review Report in accordance with the requirements of Section III.E.

5. A Stipulated Penalty of $1,500 for each day STHS fails to grant access as required in Section VII. (This Stipulated Penalty shall begin to accrue on the date STHS fails to grant access.)

6. A Stipulated Penalty of $5,000 for each false certification submitted by or on behalf of STHS as part of its Implementation Report, Annual Report, additional documentation to a report (as requested by the OIG), or otherwise required by this CIA.

7. A Stipulated Penalty of $1,000 for each day STHS fails to comply fully and adequately with any obligation of this CIA. OIG shall provide notice to STHS stating the specific grounds for its determination that STHS has failed to comply fully and adequately with the CIA obligation(s) at issue and steps STHS shall take to comply with the CIA. (This Stipulated Penalty shall begin to accrue 10 days after STHS receives this notice from OIG of the failure to comply.) A Stipulated Penalty as described in this Subsection shall not be demanded for any violation for which OIG has sought a Stipulated Penalty under Subsections 1-6 of this Section.

B. Timely Written Requests for Extensions. STHS may, in advance of the due date, submit a timely written request for an extension of time to perform any act or file any notification or report required by this CIA. Notwithstanding any other provision in this Section, if OIG grants the timely written request with respect to an act, notification, or report, Stipulated Penalties for failure to perform the act or file the notification or report shall not begin to accrue until one day after STHS fails to meet the revised deadline set by OIG. Notwithstanding any other provision in this Section, if OIG denies such a timely written request, Stipulated Penalties for failure to perform the act or file the notification or report shall not begin to accrue until three business days after STHS receives OIG's written denial of such request or the original due date, whichever is later.

South Texas Health System
Corporate Integrity Agreement

30

A "timely written request" is defined as a request in writing received by OIG at least five business days prior to the date by which any act is due to be performed or any notification or report is due to be filed.

C. Payment of Stipulated Penalties.

1. *Demand Letter*. Upon a finding that STHS has failed to comply with any of the obligations described in Section X.A and after determining that Stipulated Penalties are appropriate, OIG shall notify STHS of: (a) STHS's failure to comply; and (b) OIG's exercise of its contractual right to demand payment of the Stipulated Penalties (this notification is referred to as the "Demand Letter").

2. *Response to Demand Letter*. Within 10 days after the receipt of the Demand Letter, STHS shall either: (a) cure the breach to OIG's satisfaction and pay the applicable Stipulated Penalties or (b) request a hearing before an HHS administrative law judge (ALJ) to dispute OIG's determination of noncompliance, pursuant to the agreed upon provisions set forth below in Section X.E. In the event STHS elects to request an ALJ hearing, the Stipulated Penalties shall continue to accrue until STHS cures, to OIG's satisfaction, the alleged breach in dispute. Failure to respond to the Demand Letter in one of these two manners within the allowed time period shall be considered a material breach of this CIA and shall be grounds for exclusion under Section X.D.

3. *Form of Payment*. Payment of the Stipulated Penalties shall be made by electronic funds transfer to an account specified by OIG in the Demand Letter.

4. *Independence from Material Breach Determination*. Except as set forth in Section X.D.1.c, these provisions for payment of Stipulated Penalties shall not affect or otherwise set a standard for OIG's decision that STHS has materially breached this CIA, which decision shall be made at OIG's discretion and shall be governed by the provisions in Section X.D, below.

D. Exclusion for Material Breach of this CIA.

1. *Definition of Material Breach*. A material breach of this CIA means:

    a. a failure by STHS to report a Reportable Event, take corrective action, and make the appropriate refunds, as required in Section III.I;

South Texas Health System
Corporate Integrity Agreement

31

b. a repeated or flagrant violation of the obligations under this CIA, including, but not limited to, the obligations addressed in Section X.A;

c. a failure to respond to a Demand Letter concerning the payment of Stipulated Penalties in accordance with Section X.C; or

d. a failure to engage and use an IRO in accordance with Section III.E.

2. *Notice of Material Breach and Intent to Exclude.* The parties agree that a material breach of this CIA by STHS constitutes an independent basis for STHS's exclusion from participation in the Federal health care programs. Upon a determination by OIG that STHS has materially breached this CIA and that exclusion is the appropriate remedy, OIG shall notify STHS of: (a) STHS's material breach; and (b) OIG's intent to exercise its contractual right to impose exclusion (this notification is hereinafter referred to as the "Notice of Material Breach and Intent to Exclude").

3. *Opportunity to Cure.* STHS shall have 30 days from the date of receipt of the Notice of Material Breach and Intent to Exclude to demonstrate to OIG's satisfaction that:

a. STHS is in compliance with the obligations of the CIA cited by OIG as being the basis for the material breach;

b. the alleged material breach has been cured; or

c. the alleged material breach cannot be cured within the 30-day period, but that: (i) STHS has begun to take action to cure the material breach; (ii) STHS is pursuing such action with due diligence; and (iii) STHS has provided to OIG a reasonable timetable for curing the material breach.

4. *Exclusion Letter.* If, at the conclusion of the 30-day period, STHS fails to satisfy the requirements of Section X.D.3, OIG may exclude STHS from participation in the Federal health care programs. OIG shall notify STHS in writing of its

South Texas Health System
Corporate Integrity Agreement

32

determination to exclude STHS (this letter shall be referred to hereinafter as the "Exclusion Letter"). Subject to the Dispute Resolution provisions in Section X.E, below, the exclusion shall go into effect 30 days after the date of STHS's receipt of the Exclusion Letter. The exclusion shall have national effect and shall also apply to all other Federal procurement and nonprocurement programs. Reinstatement to program participation is not automatic. After the end of the period of exclusion, STHS may apply for reinstatement by submitting a written request for reinstatement in accordance with the provisions at 42 C.F.R. §§ 1001.3001-.3004.

E. Dispute Resolution

1. *Review Rights.* Upon OIG's delivery to STHS of its Demand Letter or of its Exclusion Letter, and as an agreed-upon contractual remedy for the resolution of disputes arising under this CIA, STHS shall be afforded certain review rights comparable to the ones that are provided in 42 U.S.C. § 1320a-7(f) and 42 C.F.R. Part 1005 as if they applied to the Stipulated Penalties or exclusion sought pursuant to this CIA. Specifically, OIG's determination to demand payment of Stipulated Penalties or to seek exclusion shall be subject to review by an HHS ALJ and, in the event of an appeal, the HHS Departmental Appeals Board (DAB), in a manner consistent with the provisions in 42 C.F.R. § 1005.2-1005.21. Notwithstanding the language in 42 C.F.R. § 1005.2(c), the request for a hearing involving Stipulated Penalties shall be made within 10 days after receipt of the Demand Letter and the request for a hearing involving exclusion shall be made within 25 days after receipt of the Exclusion Letter.

2. *Stipulated Penalties Review.* Notwithstanding any provision of Title 42 of the United States Code or Title 42 of the Code of Federal Regulations, the only issues in a proceeding for Stipulated Penalties under this CIA shall be: (a) whether STHS was in full and timely compliance with the obligations of this CIA for which OIG demands payment; and (b) the period of noncompliance. STHS shall have the burden of proving its full and timely compliance and the steps taken to cure the noncompliance, if any. OIG shall not have the right to appeal to the DAB an adverse ALJ decision related to Stipulated Penalties. If the ALJ agrees with OIG with regard to a finding of a breach of this CIA and orders STHS to pay Stipulated Penalties, such Stipulated Penalties shall become due and payable 20 days after the ALJ issues such a decision unless STHS requests review of the ALJ decision by the DAB. If the ALJ decision is properly appealed to the DAB and the DAB upholds the determination of OIG, the Stipulated Penalties shall become due and payable 20 days after the DAB issues its decision.

South Texas Health System
Corporate Integrity Agreement

3. *Exclusion Review.* Notwithstanding any provision of Title 42 of the United States Code or Title 42 of the Code of Federal Regulations, the only issues in a proceeding for exclusion based on a material breach of this CIA shall be:

> a. whether STHS was in material breach of this CIA;
>
> b. whether such breach was continuing on the date of the Exclusion Letter; and
>
> c. whether the alleged material breach could not have been cured within the 30-day period, but that: (i) STHS had begun to take action to cure the material breach within that period; (ii) STHS has pursued and is pursuing such action with due diligence; and (iii) STHS provided to OIG within that period a reasonable timetable for curing the material breach and STHS has followed the timetable.

For purposes of the exclusion herein, exclusion shall take effect only after an ALJ decision favorable to OIG, or, if the ALJ rules for STHS, only after a DAB decision in favor of OIG. STHS's election of its contractual right to appeal to the DAB shall not abrogate OIG's authority to exclude STHS upon the issuance of an ALJ's decision in favor of OIG. If the ALJ sustains the determination of OIG and determines that exclusion is authorized, such exclusion shall take effect 20 days after the ALJ issues such a decision, notwithstanding that STHS may request review of the ALJ decision by the DAB. If the DAB finds in favor of OIG after an ALJ decision adverse to OIG, the exclusion shall take effect 20 days after the DAB decision. STHS shall waive its right to any notice of such an exclusion if a decision upholding the exclusion is rendered by the ALJ or DAB. If the DAB finds in favor of STHS, STHS shall be reinstated effective on the date of the original exclusion.

4. *Finality of Decision.* The review by an ALJ or DAB provided for above shall not be considered to be an appeal right arising under any statutes or regulations. Consequently, the parties to this CIA agree that the DAB's decision (or the ALJ's decision if not appealed) shall be considered final for all purposes under this CIA.

## XI.   EFFECTIVE AND BINDING AGREEMENT

South Texas Health System
Corporate Integrity Agreement

34

STHS and OIG agree as follows:

A. This CIA shall be binding on the successors, assigns, and transferees of STHS;

B. This CIA shall become final and binding on the date the final signature is obtained on the CIA;

C. This CIA constitutes the complete agreement between the parties and may not be amended except by written consent of the parties to this CIA;

D. OIG may agree to a suspension of the obligations under the CIA in the event that STHS ceases to participate in Federal health care programs. If STHS ceases to participate in Federal health care programs and the OIG suspends the obligations under the CIA, STHS shall notify OIG at least 30 days in advance of the intent of STHS to resume participating as a provider or supplier with any Federal health care program. Upon receipt of such notification, OIG shall evaluate whether the CIA should be reactivated or modified.

E. The undersigned STHS signatory represents and warrants that he is authorized to execute this CIA. The undersigned OIG signatory represents that he is signing this CIA in his official capacity and that he is authorized to execute this CIA.

F. This CIA may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same CIA. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this CIA.

**ON BEHALF OF**
**MCALLEN HOSPITALS, L.P. D/B/A SOUTH TEXAS HEALTH SYSTEM**

/Doug Matney/

BY                                                        DATED: 10/8/09

**DØUG MATNEY**
Group Vice President
McAllen Hospitals, L.P., d/b/a South Texas Health System

South Texas Health System
Corporate Integrity Agreement

36

ON BEHALF OF THE OFFICE OF INSPECTOR GENERAL
OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES

/Gregory E. Demske/

_____          10/15/09
GREGORY E. DEMSKE                          DATE
Assistant Inspector General for Legal Affairs
Office of Inspector General
U. S. Department of Health and Human Services

South Texas Health System
Corporate Integrity Agreement

37

# APPENDIX A

## FOCUS ARRANGEMENTS DATABASE

STHS shall create and maintain a Focus Arrangements Database to track all new and existing Focus Arrangements in order to ensure that each Focus Arrangement does not violate the Anti-Kickback Statute and Stark Law. The Focus Arrangements Database shall contain certain information to assist STHS in evaluating whether each Focus Arrangement violates the Anti-Kickback Statute and Stark Law, including but not limited to the following:

1.      Each party involved in the Focus Arrangement;

2.      The type of Focus Arrangement (e.g., physician employment contract, medical directorship, lease agreement);

3.      The term of the Focus Arrangement, including the effective and expiration dates and any automatic renewal provisions;

4.      The amount of compensation to be paid pursuant to the Focus Arrangement and the means by which compensation is paid;

5.      The methodology for determining the compensation under the Focus Arrangements, including the methodology used to determine the fair market value of such compensation;

6.      Whether the amount of compensation to be paid pursuant to the Focus Arrangement is determined based on the volume or value of referrals between the parties;

7.      Whether each party has fulfilled the requirements of Section III.D.2; and

8.      Whether the Focus Arrangement satisfies the requirements of an Anti-Kickback Statute safe harbor and/or a Stark Law exception or safe harbor, as applicable.

South Texas Health System
Corporate Integrity Agreement - Appendix A

**APPENDIX B**

**INDEPENDENT REVIEW ORGANIZATION**

This Appendix contains the requirements relating to the Independent Review Organization (IRO) required by Section III.E of the CIA.

A.    IRO Engagement.

        STHS shall engage an IRO that possesses the qualifications set forth in Paragraph B, below, to perform the responsibilities in Paragraph C, below. The IRO shall conduct the review in a professionally independent and objective fashion, as set forth in Paragraph D. Within 30 days after OIG receives written notice of the identity of the selected IRO, OIG will notify STHS if the IRO is unacceptable. Absent notification from OIG that the IRO is unacceptable, STHS may continue to engage the IRO.

        If STHS engages a new IRO during the term of the CIA, this IRO shall also meet the requirements of this Appendix. If a new IRO is engaged, STHS shall submit the information identified in Section V.A.11 of the CIA to OIG within 30 days of engagement of the IRO. Within 30 days after OIG receives written notice of the identity of the selected IRO, OIG will notify STHS if the IRO is unacceptable. Absent notification from OIG that the IRO is unacceptable, STHS may continue to engage the IRO.

B.    IRO Qualifications.

The IRO shall:

        1. assign individuals to conduct the Focus Arrangements Review engagement who are knowledgeable in the requirements of the Anti-Kickback Statute and the Stark Law; and

        2. have sufficient staff and resources to conduct the reviews required by the CIA on a timely basis.

C.    IRO Responsibilities.

The IRO shall:

        1. perform each Focus Arrangements Review in accordance with the specific requirements of the CIA;

        2. respond to all OIG inquires in a prompt, objective, and factual manner; and

3. prepare timely, clear, well-written reports that include all the information required by Section III.E of the CIA.

D.     IRO Independence and Objectivity.

The IRO must perform the Focus Arrangements Review in a professionally independent and objective fashion, taking into account any other business relationships or engagements that may exist between the IRO and STHS.

E.     IRO Removal/Termination.

1. *Provider.* If STHS terminates the IRO during the course of the engagement, STHS must submit a notice explaining its reasons to OIG no later than 30 days after termination. STHS must engage a new IRO in accordance with Paragraph A of this Appendix.

2. *OIG Removal of IRO.* In the event OIG has reason to believe that the IRO does not possess the qualifications described in Paragraph B, is not independent and objective as set forth in Paragraph D, or has failed to carry out its responsibilities as described in Paragraph C, OIG may, at its sole discretion, require STHS to engage a new IRO in accordance with Paragraph A of this Appendix.

Prior to requiring STHS to engage a new IRO, OIG shall notify STHS of its intent to do so and provide a written explanation of why OIG believes such a step is necessary. To resolve any concerns raised by OIG, STHS may request a meeting with OIG to discuss any aspect of the IRO's qualifications, independence or performance of its responsibilities and to present additional information regarding these matters. STHS shall provide any additional information as may be requested by OIG under this Paragraph in an expedited manner. OIG will attempt in good faith to resolve any differences regarding the IRO with STHS prior to requiring STHS to terminate the IRO. However, the final determination as to whether or not to require STHS to engage a new IRO shall be made at the sole discretion of OIG.

**APPENDIX C**

# OVERPAYMENT REFUND

## TO BE COMPLETED BY MEDICARE CONTRACTOR

Date:
Contractor Deposit Control #_____ Date of Deposit: _____
Contractor Contact Name:_____ Phone #_____
Contractor Address:_____
Contractor Fax:_____

## TO BE COMPLETED BY PROVIDER/PHYSICIAN/SUPPLIER

*Please complete and forward to Medicare Contractor. This form, or a similar document containing the following information, should accompany every voluntary refund so that receipt of check is properly recorded and applied.*

PROVIDER/PHYSICIAN/SUPPLIERNAME_____
ADDRESS
PROVIDER/PHYSICIAN/SUPPLIER #_____ CHECK NUMBER#_____
CONTACT PERSON:_____ PHONE #_____ AMOUNT OF CHECK
$_____ CHECK DATE_____

## REFUND INFORMATION

**For each Claim, provide the following:**
Patient Name_____ HIC #_____
Medicare Claim Number_____ Claim Amount Refunded $_____
Reason Code for Claim Adjustment:_____ (Select reason code from list below. Use one reason per claim)

*(Please list all claim numbers involved. Attach separate sheet, if necessary)*

*Note: If Specific Patient/HIC/Claim #/Claim Amount data not available for all claims due to Statistical Sampling, please indicate methodology and formula used to determine amount and reason for overpayment:_____*

**For Institutional Facilities Only:**
Cost Report Year(s)_____
(If multiple cost report years are involved, provide a breakdown by amount and corresponding cost report year.)
**For OIG Reporting Requirements:**
Do you have a Corporate Integrity Agreement with OIG?          Yes          No

**Reason Codes:**

| Billing/Clerical Error | MSP/Other Payer Involvement | Miscellaneous |
|---|---|---|
| 01 - Corrected Date of Service | 08 - MSP Group Health Plan Insurance | 13 - Insufficient Documentation |
| 02 - Duplicate | 09 - MSP No Fault Insurance | 14 - Patient Enrolled in an HMO |
| 03 - Corrected CPT Code | 10 - MSP Liability Insurance | 15 - Services Not Rendered |
| 04 - Not Our Patient(s) | 11 - MSP, Workers Comp.(Including | 16 - Medical Necessity |
| 05 - Modifier Added/Removed | Black Lung | 17 - Other (Please Specify) |
| 06 - Billed in Error | 12 - Veterans Administration | _____ |
| 07 - Corrected CPT Code | | |

STHS CIA – Appendix C

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| UNITED STATES *ex rel.* | ) | |
| June P. Brinson, Barbara A. Burke, | ) | |
| Adrienne D. Reynolds, Demeka N. | ) | |
| Smith, Lisa P. Torras and Inez | ) | |
| Mitchell-Warrick | ) | |
| | ) | |
| BRINGING THIS ACTION ON | ) | CIVIL ACTION FILE NO. |
| BEHALF OF THE UNITED STATES | ) | 5 : 14-CV- 157 |
| OF AMERICA AND THE STATE | ) | JURY TRIAL DEMANDED |
| OF GEORGIA | ) | |
| | ) | |
| Plaintiffs-Relators, | ) | **FILED *IN* CAMERA AND** |
| | ) | **UNDER SEAL** |
| vs. | ) | |
| | ) | |
| UNIVERSAL HEALTH SERVICES, | ) | **DO NOT PUT IN PACER** |
| INC., A DELAWARE | ) | **OR SERVE** |
| CORPORATION, UHS OF | ) | |
| DELAWARE, INC., A DELAWARE | ) | |
| CORPORATION, PSYCHIATRIC | ) | |
| SOLUTIONS, INC., A DELAWARE | ) | |
| CORPORATION, HHC ST. SIMONS, | ) | |
| INC., A GEORGIA CORPORATION | ) | |
| DOING BUSINESS AS ST. SIMONS | ) | |
| BY-THE-SEA OR FOCUS BY-THE- | ) | |
| SEA, MONICA COOK, GAYLE | ) | |
| ECKERD, LESLI JETER, M. J. | ) | |
| MARTELLI, M.D., P.C. AND | ) | |
| ASSOCIATES and MIGUEL | ) | |
| MARTELLI, M.D. | ) | |
| Defendants. | ) | |
| | ) | |

**PROTECTIVE ORDER REGARDING RELATOR'S STATEMENT**

Pursuant to 31 U.S.C. §3730(b)(2), this *qui tam* False Claims Act lawsuit has been filed this 22nd day of April, 2014, *in camera* and under seal. During the United States of America's investigation of the allegations set forth in the Relators' Complaint, the United States is permitted to utilize the documents, records and materials provided by the Relators in any manner it deems appropriate. However, the narrative portions of the Relators' written disclosure statement shall be maintained as confidential by the United States and shall not be released to the Defendants or their Counsel. Moreover, in conformity with 31 U.S.C. §3730(b)(2), no pleading filed herein shall be provided to, or served upon, the Defendants nor the names of the parties or the existence of this lawsuit be publicly disclosed or otherwise disclosed to the Defendants, until the Court so orders or at least sixty (60) days shall have expired.

So Ordered this _____ day of April, 2014.

_____
JUDGE, UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA,
MACON DIVISION

- 2 -

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

**5:14-CV-157**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States ex rel. June P. Brinson, Barbara A. Burke, Adrienne D. Reynolds, Demeka N. Smith, Lisa P. Torras and Inez Mitchell-Warrick

**DEFENDANTS**
Universal Health Services, Inc., UHS of Delaware, Inc., Psychiatric Solutions, Inc., HHC St. Simons, Inc., Monica Cook, Gayle Eckerd, Lesli Jeter, M.J. Martelli, M.D., P.C. and Ass. and Miguel Martelli, M.D

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Raymond L. Moss, Esq.
Moss & Gilmore LLP, 3630 Peachtree Road, NE, Suite 1025, Atlanta, Georgia 30326; Telephone: (678) 381-8601

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff
☐ 3  Federal Question *(U.S. Government Not a Party)*
☐ 2  U.S. Government Defendant
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☒ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans | Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| (Excludes Veterans) | ☐ 340 Marine | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | ☐ 362 Personal Injury - | Product Liability | Leave Act | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
False Claims Act, 31 U.S.C. Sec. 3729 et seq.
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.C.v.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____
DOCKET NUMBER _____

DATE 4/22/14
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____